# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BROOK MILLS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | MEMORANDUM DECISION &<br>ORDER<br><br>Case No. 2:16-cv-01209-DBP<br><br>Magistrate Judge Dustin B. Pead |

All parties in this case have consented to the jurisdiction of United States Magistrate Judge Pead, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. *See* 28 U.S.C. § 636 (c); F.R.C.P. 73; (ECF No. 15). Pursuant to 42 U.S.C. § 405(g), Plaintiff Brook Mills (Plaintiff) seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments, as presented at a telephonic hearing held on October 5, 2017, (ECF No. 24), the court hereby affirms the Commissioner's final decision.

## I.　　PROCEDURAL HISTORY

Plaintiff was 33 years old at the time she alleges that she became disabled in January 2011 due to lower back pain, bipolar disorder, depression, anxiety, diabetes, endometriosis, and fibromyalgia (Certified Administrative Transcript (Tr.) 208, 221). *See* 20 C.F.R. § 404.1563(c). Before she stopped working in 2008, Plaintiff was a semi-skilled service clerk for 11 years (Tr. 41, 71). The relevant time period in this case is from Plaintiff's alleged onset of disability of January 27, 2011, to the date her insured status expired on September 30, 2013. (Tr. 208). *See* 42

**Page 1**

U.S.C. § 423(c)(1) (defining "insured" for purposes of a DIB claim); *see also* 20 C.F.R. §§ 404.131(a), 404.320(b)(2) (discussing insured status for purposes of DIB benefits).

The ALJ followed the five-step sequential evaluation process in order to determine whether Plaintiff was disabled (Tr. 18-31). *See* 20 C.F.R. § 404.1520(a)(4). As relevant here, the ALJ found that Plaintiff had severe impairments including fibromyalgia, endometriosis, morbid obesity, right wrist carpal tunnel syndrome, anxiety disorder, depressive disorder, and bipolar disorder, but that she did not have an impairment or combination of impairments that met or medically equaled any of the presumptively disabling impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (the "Listings") (Tr. 20-22). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, as defined in 20 § CFR 404.1567(b), such that she could frequently handle with the right hand; occasionally climb ramps and stairs; never climb ladders, scaffolds, or ropes; occasionally stoop; and must occasionally avoid unprotected heights and moving mechanical parts. Plaintiff also had mental limitations but could perform simple, routine, and repetitive tasks not at a production-rate pace (such as assembly line work); make simple work-related decisions; and occasionally respond to the public. If Plaintiff required time to be "off-task," that could be accommodated by normal breaks (Tr. 24).

After obtaining vocational expert testimony, the ALJ found that Plaintiff's RFC precluded her from performing her past relevant work, but not from performing occupations that existed in significant numbers in the national economy (Tr. 30-31). Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 31).

Thereafter, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 404.981. This appeal followed.

**Page 2**

## II. STANDARD OF REVIEW

The Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a mere scintilla," or such evidence as a "reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "In reviewing the ALJ's decision, [a court may] neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted). Where the evidence as a whole supports the ALJ's decision, that decision must be affirmed, regardless of whether the Court would have reached a different result had the record been before it de novo. *See Lax*, 489 F.3d at 1084.

## III. DISCUSSION

In challenging the ALJ's decision, Plaintiff asserts that the ALJ (1) did not include limitations in the RFC related to her carpal tunnel syndrome, obesity, fibromyalgia, sleep apnea, and mental impairments; (2) did not properly weigh the medical source opinions in the record; (3) erred in finding that her statements were inconsistent with the rest of the record; and (4) failed to resolve a conflict at step five of the sequential evaluation process (*see generally* ECF No. 18, Plaintiff's Opening Brief (Pl. Br.) at 10-16). The Court addresses each of Plaintiff's arguments and, for the reasons discussed below, finds that the ALJ's decision should be affirmed.

### A. The Residual Functional Capacity Assessment Accounted for Plaintiff's Impairments.

The Court concludes that the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence. In particular, the RFC considered Plaintiff's severe impairments, including

obesity, fibromyalgia, carpal tunnel syndrome, her non-severe impairment of sleep apnea, and her mental impairments including anxiety disorder, depressive disorder, and bipolar disorder. *See* 20 C.F.R. § 404.1545(a)(2) (ALJ must consider both severe and non-severe impairments when assessing RFC). When the impairments resulted in limitations that were supported by record evidence, the ALJ included and properly accounted for those limitations in the RFC. *See Young v. Barnhart*, 146 F. App'x. 952, 955 (10th Cir. 2005) (unpublished) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities. . . . The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence."). Each of Plaintiff's impairments is addressed herein.

### i) Obesity

The ALJ noted that he considered Plaintiff's obesity when evaluating the medical evidence as required by Social Security Ruling (SSR) 02-1p (Tr. 22). He also "considered her obesity when considering her other physical impairments and residual functional capacity" (Tr. 26). The ALJ's decision further reflects that he gave substantial weight to the opinions of state agency physicians Dr. Barton and Dr. Thobe (Tr. 28), who considered Plaintiff's obesity and assessed appropriate functional limitations (Tr. 115-18, 130-32). Moreover, there is no evidence in the record that Plaintiff had limitations beyond those in the RFC resulting from her obesity and Plaintiff does not identify any evidence of functional loss related to obesity. Further, Plaintiff did not allege any functional loss related to obesity in her disability application, when submitting functional reports to the agency, or while testifying at the administrative hearing. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (unpublished) ("[T]here is

**Page 4**

no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC" assessed by the ALJ). Thus, the record does not support Plaintiff's claim that she required additional restrictions beyond those in the RFC based on her alleged obesity. Rather, the ALJ adequately considered accounted for all of Plaintiff's supported limitations and assessed a restrictive RFC. Accordingly, Plaintiff fails to establish any error.

### ii) Fibromyalgia

The ALJ considered that Plaintiff's fibromyalgia could have caused back pain (Tr. 21) and that she complained of diffuse pain and tenderness (Tr. 321-24), but, overall, the record showed that she had normal ambulation and her trigger points improved (Tr. 25, 335). Moreover, records prior to, during, and after the pertinent period indicated that Plaintiff had a normal gait and station and was ambulating effectively with no assistance, indicating her fibromyalgia did not impact her ability to walk and stand (Tr. 25, 332, 458, 572). Fibromyalgia also did not appear to cause her great pain, as the Plaintiff testified that she only took pain pills when she "really, really need[ed] them" and never more than one per day (Tr. 25, 47, 50-52, 55-56). *See* 20 C.F.R. § 404.1529(c)(2) (the ALJ should consider objective evidence because it is "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work"); *see also Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) ("'While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.'") (*quoting Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n. 5.) (1st Cir. 2003). Therefore, it was reasonable for the ALJ to conclude, if Plaintiff's pain was as

**Page 5**

limiting as she alleged, it would manifest itself in her gait, strength, or range of motion. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (diagnosis of a condition, alone, does not establish disability). Because the ALJ properly considered the effects of Plaintiff's fibromyalgia and subjective complaints of pain, the Court does not find error.

### iii) Carpal Tunnel Syndrome

Next, the ALJ considered Plaintiff's carpal tunnel syndrome even though she complained of symptoms in April 2015, which was well outside the relevant time period (Tr. 26). *See Huston v. Bowen*, 838 F.2d 1125, 1127 (10th Cir. 1988) (claimant's eligibility for DIB turned on the severity of his back problems prior to his date last insured). Nevertheless, "out of an abundance of caution," and considering possible side effects from her medications, the ALJ limited Plaintiff to frequent fingering with her right hand (Tr. 26). Thus, the ALJ adequately accounted for Plaintiff's credible carpal tunnel complaints.

### iv) Sleep Apnea

Plaintiff also argues the ALJ failed to consider her non-severe impairment of sleep apnea. The only record Plaintiff cited to in support is dated February 2015 to May 2015; well after the relevant time period. *See Potter v. Sec'y. of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) ("the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status" (emphasis in original)); *Huston*, 838 F.2d at 1127. Thus, the Court finds no error.

### v) Mental Impairments

Finally, the ALJ considered Plaintiff's mental impairments, including depression, anxiety, and bipolar disorder (Tr. 22-23, 26-29). Contrary to Plaintiff's contention, the mere existence of severe impairments is insufficient to establish disability under the Act. Rather, to establish an

**Page 6**

entitlement to disability benefits, Plaintiff had to show that her impairments caused functional limitations so severe that she was unable to engage in substantial gainful activity for a continuous period of at least 12 months.  *See* U.S.C. § 423(d)(1)(A).  Moreover, "a finding of a severe impairment at step two does not require the ALJ to find the claimant lacks the residual functional capacity to work."  *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). Indeed, a finding of severe impairment does not require a "one-for-one correlation" requiring the ALJ to find that all "severe" impairments require "severe" functional limitations.  *Harris v. Astrue*, 11-CV-567-PJC, 2012 WL 6552786 (N.D. Okla. Dec. 14, 2012) (unpublished) ("[T]here is no such requirement and to include such a correlation in the Social Security disability framework would be nonsensical and would abolish the need for the five-step sequential process.").  Because the ALJ was not required to include limitations in the RFC that were not supported by the record, this Court upholds the ALJ's findings. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

      Also relevant to the mental impairment analysis is the ALJ's consideration of Plaintiff's ability to care for her son who was between two and five during the alleged period of disability (although she also claimed she had help from her family) (Tr. 22, 41).  In function reports submitted in conjunction with her disability application, Plaintiff claimed that she prepared meals for her family three times per day, did dishes, and shopped for groceries (Tr. 22-23, 26, 233-39). She went out to dinner with her husband once per week, and went to the movies every few weeks, and visited her family and sister every day (Tr. 23, 26, 49, 236).  In addition, during her 2011 consultative examination with Dr. Hardy, Plaintiff had adequate concentration, attention, and long-term memory (Tr. 23, 26, 301-02) and her counseling records consistently showed that she had intact attention and memory (Tr. 23; *see, e.g.*, Tr. 701).

Considering this evidence, the Court finds that the ALJ's RFC limitation to simple work with additional social and pace restrictions adequately accounted for Plaintiff's limitations. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("[t]he evidence in the record regarding [the claimant's] mental status support[ed] the ALJ's RFC determination that limiting [the claimant] to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace."); *see also Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) (finding an RFC limitation to "simple, repetitive, and routine tasks . . . incorporated the functional limitations of [the claimant's] moderate nonexertional impairments" (footnote omitted)).

Even if the evidence was susceptible to a different interpretation, the ALJ's decision must be upheld where, as here, it is legally sound and supported by substantial evidence. *Tillery v. Schweiker*, 713 F.3d 601, 603 (10th Cir. 1983) (when the evidence permits varying inferences, the court may not substitute its judgment for that of the ALJ); *Lax*, 489 F.3d 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted).

**B. The ALJ's Treatment of the Medical Source Opinions was Supported by Substantial Evidence.**

Plaintiff argues the ALJ should have given greater weight to the opinions of Emily Harold, M.D., and Sara Carstensen, P.A. (Pl. Br. at 17-18). As the Commissioner points out, however, these medical providers did not provide opinions on Plaintiff's functional limitations

and the ALJ was not required to weigh their treatment notes. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians. . . or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.").

Plaintiff further asserts the ALJ should have given greater weight to the opinions of nurse Cathy Seegers, APRN, and treating physician Patrick Green, M.D., both of whom opined that Plaintiff had moderate and marked restrictions in various areas of mental functioning (Pl. Br. 17; *see* Tr. 563-64, 955). Nurse Seeger's opinion is dated September 2008, well before the January 2011 alleged onset of disability. Similarly, Dr. Green rendered his opinion in July 2015—almost two years after the relevant time period. Because these opinions did not concern the time period at issue, it was reasonable and appropriate for the ALJ to reject them.

In the decision, the ALJ gave significant weight to the opinions of the state agency physicians and the state agency psychologists. (Tr. 28). *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"). The ALJ concluded that the opinions of state agency psychologists Dr. Chesley's and Dr. Huebner were consistent with the record, particularly Plaintiff's reported activities. *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ considers consistency); *see also Castellano v. Sec'y. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (ALJ reasonably discounted treating physician opinion which was inconsistent with the claimant's own statements about his activities). Likewise, the ALJ found that Dr. Barton and Dr. Thobe's opinions were consistent with the rest of the record; however,

**Page 9**

the ALJ included additional limitations in the RFC in order to account for Plaintiff's physical limitations (Tr. 28). *See* 20 C.F.R. § 404.1527(c)(4).

Here, Plaintiff's request that the ALJ assign different weight to the medical source opinions is simply a request for this court to re-weigh the evidence. The court, however, can "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold*, 718 F.3d at 1262 (internal citation omitted).

### C. The ALJ Reasonably Found Plaintiff's Statements Were Inconsistent With The Record Evidence.

Plaintiff argues that objective findings support her claims and the ALJ should not have found her statements to be inconsistent. Yet, in doing so, Plaintiff does not challenge the validity of the ALJ's reasoning (Pl. Br. at 23-24). According to the Tenth Circuit, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Here, the ALJ provided several legally valid reasons for his determination that Plaintiff's testimony, function reports, and reports regarding healthcare providers were inconsistent with the rest of the record (Tr. 27). *See* 20 C.F.R. § 404.1529(c)(4) (an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence); *see also* SSR 96-7p, 1996 WL 374186, at *5 (stating that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record). These inconsistencies provide a permissible basis for the ALJ to find that Plaintiff's limitations were not as functionally limiting as she alleged. Therefore, the Court finds no error in the ALJ's evaluation of Plaintiff's statements.

### D. There Was No Conflict Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles.

Lastly, Plaintiff contends the ALJ failed to inquire about a conflict between the vocational expert (VE) testimony and the Dictionary of Occupational Titles (DOT) regarding his findings at step five of the sequential evaluation process (Pl. Br. at 19-23). To the contrary, the ALJ did ask the vocational expert if his testimony was consistent with information in the DOT, and the expert testified that it was (Tr. 73). This is all that is required under SSR 00-4p. 2000 WL 1898704, at *4; *see also Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished) (rejecting a challenge to a vocational expert's testimony where the jobs conflicted with a reaching restriction identified by the DOT because "the VE testified that the jobs he identified were consistent with a hypothetical person with [the claimant's] impairments and the DOT.").

Moreover, there was no conflict between the jobs identified and the RFC finding or hypothetical question to the VE. Plaintiff contends that the jobs identified by the VE conflict with the RFC limitation to "simple, repetitive tasks" because they require a general educational development (GED) reasoning level of 3 (Pl. Br. at 21-23). But, both the DOT and Tenth Circuit case law recognize that GED levels do not describe the specific mental or skill requirements of a particular job. Instead, GED levels describe the general educational background that would ordinarily make an individual suitable for the job. DOT App. C, § III, available at 1991 WL 688702. GED does not describe the duties, the requirements, or the particular mental demands of any particular occupation listed in the DOT. Rather, GED describes in general terms the educational level expected of someone who performs a given occupation. *See Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished). Thus, because there was no conflict between the jobs

identified by the VE and adopted by the ALJ in his step five findings, the Court finds no error in the ALJ's decision.

## IV. CONCLUSION

Accordingly, because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, the Court hereby AFFIRMS.

Dated this 25th day of October, 2017

Dustin B. Pead
U.S. Magistrate Judge